FILED

2012 May-17  AM 09:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **DENNIS A. HAZEL,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]   **1:10-CV-2113-KOB** |
| **MONARCH WINDOWS AND** | ] |
| **DOORS, LLC, and WOODGRAIN** | ] |
| **MILL WORK, INC.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

A company interviews two qualified candidates for a recently vacant position. One candidate is under forty and another candidate is over forty. One candidate interviews well and the managers believe he will be a good fit with their team, while the other candidate does not interview well and the managers feel he will fit poorly with the team. The offer, unsurprisingly, is given to the candidate who interviews well. If the candidate who was rejected is over age forty, can he bring a claim under the Age Discrimination in Employment Act ("ADEA") that should be allowed to proceed to a trial by jury?

As this court considers Defendant Monarch Windows and Doors, LLC's Motion for Summary Judgment (doc. 28), it must answer this question in determining whether Plaintiff Dennis Hazel's age discrimination claim should survive summary judgment, even though no direct evidence of discriminatory animus is present in the record. The court, upon considering the parties' submissions and the evidence in this case, concludes that the evidence does not support Mr. Hazel's ADEA claim against Monarch for its decision not to hire him. Mr. Hazel has not

1

raised a genuine issue of material fact that age was the "but-for" cause of Monarch's decision to hire a younger applicant, Joseph Webster, nor that age was even a factor in Monarch's decision. Accordingly, and for the reasons explained below, Monarch's motion for summary judgment is due to be granted.

**<u>BACKGROUND</u>**

The court views the following facts in the light most favorable to Mr. Hazel. The court notes that Mr. Hazel, in responding to Monarch's statement of undisputed facts, did not actually dispute Monarch's stated *facts*, which Monarch supported by citing to the evidentiary record. Instead, Mr. Hazel stated, in response to Monarch's facts, that "Plaintiff disputes that the reason offered for Webster's selection, his supposedly superior communication and thus overall superior qualification, was the true motivation for Webster's selection over Plaintiff." Pl. Opp. Br. at 1–2. The court first notes that Mr. Hazel did not support any of his disputes with citations to the evidentiary record, as required by the Scheduling Order and Appendix II. *See* Scheduling Order at 3–4 (doc. 20) ("All potentially dispositive motions . . . must comply with this court's requirements as stated in 'Appendix II' . . . ."); Appendix II at 4 ("Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based."). The court also notes that Mr. Hazel did not dispute Monarch's facts as untrue, but instead challenged the *inferences* that may be drawn from Monarch's facts. Accordingly, the court takes Monarch's statement of facts as undisputed.

Monarch Windows and Doors manufactures and sells wood windows and doors for both residential and commercial properties. In late 2007, Monarch had a vacancy at the sales management level after it terminated a sales manager who failed to develop sales the way

Monarch desired.

In searching for a new sales manager, Monarch's Human Resources Manager, Diane Tillery, found Mr. Hazel's resume online and contacted him about whether he was interested in interviewing for Monarch's Sales Manager position. Over the following few months, Mr. Hazel spoke by phone with Ms. Tillery and with Monarch's General Manager, Brian Loynachan, about the job and about Mr. Hazel's experience.

At Monarch's request, Mr. Hazel came to Anniston, Alabama to interview for the Sales Manager position. At around the same time, Monarch also asked Joseph Webster, another candidate for the Sales Manager position, to interview for the position in Anniston. Both candidates were invited to interview because of their "experience and impressive resumes," Aff. Brian Loynachan ¶ 5, and both candidates completed a Monarch Job Application form on January 9, 2008.

Both candidates' application forms evinced extensive sales experience. Mr. Hazel's job application and resume indicated that he had approximately twenty-five years of experience in sales. The majority of this time, about twenty years, was spent at Hurd Millwork, where Mr. Hazel held the title of Eastern Sales Manager and started out with $5 million in sales. In 1999, when he left Hurd, he claimed responsibility for almost $80 million in sales annually.

Mr. Webster's job application and resume indicated that he had approximately fifteen years of sales experience, and ten years of sales management experience. The revenues varied for the sales teams that Mr. Webster managed, but the highest annual sales revenue he had managed during his career before Monarch was $15 million.

On January 10, 2008, four Monarch managers interviewed Mr. Hazel and Mr. Webster.

3

The interviewers included Mark Rieser, Vice President of Sales and Marketing for Windsor Windows and Doors, of which Monarch was a division; Felix Winston, Monarch's Director of Operations; Ms. Tillery; and Mr. Loynachan. At the time of the interviews, Mr. Rieser was forty-three years old, Mr. Winston was fifty-eight years old, Ms. Tillery was fifty-nine years old, and Mr. Loynachan was forty-four years old, while  Mr. Hazel was sixty-six years old and Mr. Webster was thirty-four years old.

Throughout the interview process, the managers recognized that Mr. Hazel had considerable experience as a sales manager in the window and door industry. In Mr. Rieser's candidate evaluation form for Mr. Hazel, he notes about Mr. Hazel: "Connected, been there - done that. Has been part of very successful team @ Hurd." Ex. A to Aff. Teresa Hughes at 1.[1] He also noted that Mr. Hazel had a "[g]reat deal of experience and knowledge; has good reputation." Similarly, Ms. Tillery noted under the candidate evaluation form's heading "Supervisory experience and ability to handle responsibility" that Mr. Hazel was "very experienced." Ex. B to Aff. Teresa Hughes at 1. In this area, both managers concluded that Mr. Hazel "Fully meets requirements."

In contrast, Mr. Rieser marked Mr. Webster's knowledge and experience as "borderline," concluding that he "[h]as little experience @ this level but is process and detail oriented." Ex. C to Aff. Teresa Hughes at 1. Ms. Tillery, however, marked Mr. Webster's knowledge and experience "superior," noting that "[b]oth knowledge + experience would bring an upgrade to the present staff." Ex. D to Aff. Teresa Hughes at 1.

---

[1] Although all the interviewers supposedly filled out candidate evaluation forms, Monarch could only produce two during discovery. According to the managers, the interview forms were filled out shortly after the interviews and were dated the same day as the interviews.

4

Notwithstanding the managers' recognition of Mr. Hazel's experience, their consensus after the interviews was that Mr. Hazel had performed poorly in person and that Mr. Webster was a much better communicator than Mr. Hazel. Mr. Rieser's and Ms. Tillery's candidate evaluation forms reflect this consensus. Mr. Rieser marked Mr. Hazel's communication skills as unacceptable, noting that Mr. Hazel "[d]oes not listen, interrupted numerous times, [and] could not explain thoughts well." *See* Ex. A to Aff. Teresa Hughes at 2. Ms. Tillery marked Mr. Hazel's communication skills as borderline, noting that he "seems slow in communication." *See* Ex. B to Aff. Teresa Hughes at 2.

In contrast, Mr. Rieser marked Mr. Webster's communication skills as superior, noting "[e]xcellent verbal, talks too much but possibly nervous. Should listen more." Ex. C to Aff. Teresa Hughes at 2. Ms. Tillery also had positive comments about Mr. Webster's communication skills, marking him as fully meeting requirements and noting that he "knows how to interact with others, looks forward to a challenge." *See* Ex. D to Aff. Teresa Hughes at 2. Although Monarch could not produce Mr. Loynachan's candidate evaluation forms, Mr. Loynachan submitted a sworn affidavit attesting that, in his opinion, Mr. Hazel "was not a strong communicator" and "did not make a favorable impression in his interview," while Mr. Webster "demonstrated excellent communication skills and made a very favorable impression in his interview with me."Aff. Brian Loynachan ¶¶ 7,8. Mr. Loynachan concluded, after the interviews, that "Mr. Webster possessed better interpersonal skills than Mr. Hazel and was the better candidate for the position we were looking to fill." Aff. Brian Loynachan ¶ 8. Monarch only produced evidence from three of the four managers; Mr. Winston's candidate evaluation form could not be located and he passed away on January 25, 2011.

Monarch's evidence shows that the managers responsible for the hiring decision ultimately chose Mr. Webster over Mr. Hazel because they felt Mr. Webster "had the skills and the personality that would work best at Monarch with Monarch's management team." Depo. Mark Rieser 28:23–29:1. In contrast, the managers noted that Mr. Hazel would not "fit with [the] current management team." Ex. A to Aff. Teresa Hughes at 2. In deposition, Mr. Rieser emphasized the importance of a candidate's personality fit with the management team given Monarch's small size, and explained that he was "afraid that [Mr. Hazel]'s ego was going to cause a lot of problems in the office" and was "extremely concerned about placing that arrogance in a small office environment." Depo. Mark Rieser 45:5–45:10; *see also* Depo. Mark Rieser 48:2–48:7 (stating that Mr. Hazel had explained that he "wanted to take the business to the next level," in conflict with Monarch's objective of remaining a regional company).

Mr. Hazel does not offer any evidence contradicting that produced by Monarch, but asserts, without any direct proof, that Monarch's stated reasons were pretext for a more sinister motivation—age discrimination.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of

6

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).   The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.   Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."   *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

**<u>DISCUSSION</u>**

The core issue in this case is whether a genuine issue of material fact exists that Monarch

made its hiring decision based on age. The ADEA makes it unlawful to fail to hire a person who

is over forty years old "because of" their age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff may

establish a *prima facie* case of age discrimination with either direct evidence, *see Pace v. S. Ry.*

*Sys.*, 701 F.2d 1383, 1388 (11th Cir. 1983), or circumstantial evidence. *See Turlington v. Atlanta*

*Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Mr. Hazel has not adduced any direct

evidence of age discrimination, such as a blatant remark about Mr. Hazel's age or statistical

evidence; he relies only on circumstantial evidence. *See Wilson v. B/E Aerospace*, *Inc.*, 376 F.3d

1079, 1086 (11th Cir. 2004) ("Direct evidence is evidenced that, if believed, proves the existence

of a fact without inference or presumption.") (internal quotations and alterations omitted).

"Where the plaintiff has submitted solely circumstantial evidence of discrimination, [courts] may

employ the *McDonnell-Douglas* framework for ADEA claims." *Bradley v. Pfizer*, *Inc.*, 440 Fed.

Appx. 805, 807 (11th Cir. 2011) (citing *Turlington*, 135 F.3d at 1432).

     In a recent decision, the Supreme Court construed the phrase "because of" in § 623 to

require a plaintiff alleging a disparate treatment claim under the ADEA to "prove that age was

the 'but-for' cause of the employer's adverse decision." *See Gross v. FBL Fin. Servs.*, *Inc.*, 557

U.S. 167, 129 S. Ct. 2343, 2350 (2009). Notwithstanding the apparent shift in the Supreme

Court's ADEA jurisprudence, the Eleventh Circuit even more recently explained that it

traditionally applied *McDonnell Douglas's* burden-shifting framework to ADEA cases, and that

it would continue to review claims under *McDonnell Douglas* because the Supreme Court did

not overrule that precedent in *Gross*. *See Lahey v. Philips Elecs. N. Am. Corp.*, 2012 U.S. App.

LEXIS 3555 at *3 (11th Cir. 2012) ("Because the Supreme Court did not overrule this precedent

in Gross, we review [the plaintiff]'s claims under both McDonnell Douglas and Gross.").

Accordingly, the court applies the *McDonnell Douglas* burden shifting framework to Mr. Hazel's case.

<u>*Mr. Hazel's* prima facie *case under McDonnell Douglas*</u>

Under the *McDonnell Douglas* burden shifting analysis, Mr. Hazel has the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Mr. Hazel may establish a *prima facie* case by showing that he "(1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual." *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).

In this case, the evidence, when viewed in the light most favorable to Mr. Hazel, shows that he was sixty-six years old, was qualified for the job, did not receive the job, and lost the position to Mr. Webster, who was less than forty years old. Accordingly, the court concludes that Mr. Hazel has established a *prima facie* case of discrimination under the ADEA.

<u>*Monarch's legitimate, nondiscriminatory reason for not hiring Mr. Hazel*</u>

Mr. Hazel's establishment of a *prima facie* case creates a rebuttable presumption of age discrimination. *See Chapman*, 229 F.3d at 1024. The burden then shifts to Monarch to articulate a legitimate, non-discriminatory reason for not hiring Mr. Hazel. *See Chapman*, 229 F.3d at 1024. Monarch's burden under this part of the *McDonnell Douglas* analysis is "exceedingly light." *See Bradley*, 440 Fed. Appx. at 808 (citing *Meeks v. Computer Assocs. Intl.*, 15 F.3d 1013, 1019 (11th Cir. 1994)).

Monarch asserts that its decision to hire Mr. Webster over Mr. Hazel had nothing to do with age, but was instead based on the opinions of the managers who conducted the interviews.

Evidence from three of the four managers establishes that they believed Mr. Webster performed better in the interview, had superior communication skills, and would be a better fit for the position. The perception that Mr. Webster was the better candidate for the position was not only reflected in Mr. Rieser and Ms. Tillery's individual candidate evaluation forms, but was also the consensus among the managers, according to Mr. Loynachan's affidavit. The decision to hire Mr. Webster over Mr. Hazel could, thus, be described as based on a subjective reason— the interviewers' impression of the candidates—and not on an objective comparison of their qualifications.

The Eleventh Circuit in *Chapman v. AI Transport*, 229 F.3d 1012, reheard the case *en banc* to address whether subjective reasons for employment decisions could be legally sufficient, legitimate, nondiscriminatory reasons for taking adverse employment action. *See Chapman*, 229 F.3d at 1016 ("We granted rehearing en banc primarily to decide some important issues that arise regularly in job discrimination cases. Those issues have to do with an employer's ability to select its own criteria for making employment decisions and with the permissibility of using subjective criteria."). The Court explained at length that subjective reasons could be legitimate, nondiscriminatory reasons under the *McDonnell Douglas* analysis. *See Chapman*, 229 F.3d at 1033–34. In arriving at this conclusion, the Eleventh Circuit discussed how personal qualities could be of legitimate value to employers; for example, in jobs requiring continuing interaction with the public, such as sales clerks, or in jobs where the employee would be supervising others. *See Chapman*, 229 F.3d at 1033–34 ("Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position.") (internal

quotations and citations omitted). The Court found it "inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluations." *Chapman*, 229 F.3d at 1034 ("[S]ubjective reasons are not the red-headed stepchildren of preferred nondiscriminatory explanations of employment decisions. Subjective reasons can be just as valid as objective reasons.").

The Eleventh Circuit, thus, made clear that subjective reasons can be legitimate, nondiscriminatory reasons; however, for a subjective reason to be legitimate and nondiscriminatory, Monarch must articulate "a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman*, 229 F.3d at 1034. In *Chapman*, the Court found the defendant had given a clear and reasonably specific factual basis when the interviewers stated that the interviewee "was not very concise with his answers" and "did not take an aggressive approach in asking . . . questions about the position . . . ." *Chapman*, 229 F.3d at 1035.

Applying *Chapman* to this case, the court concludes that Monarch has offered a legally sufficient subjective reason for its decision to not hire Mr. Hazel, and has articulated clear and reasonably specific factual bases on which to make this decision. Ms. Tillery noted that Mr. Hazel "seem[ed] slow in communication" and Mr. Rieser explained in his candidate evaluation form that Mr. Hazel did not listen and interrupted frequently, and concluded that Mr. Hazel would not "fit with [the] current management team." In deposition, Mr. Rieser  elaborated on this point, and explained that he felt with Mr. Hazel "it was all about him and what he can do and that he was the greatest," Depo. Mark Rieser 45:7–45:8. Mr. Rieser also stated his belief that Mr. Hazel's ego would cause problems in the office, particularly given the small office environment.

12

In contrast, Ms. Tillery and Mr. Rieser both gave Mr. Webster positive evaluations on his communication skills, and Mr. Loynachan stated in his affidavit that "[i]n contrast to Mr. Hazel . . . Mr. Webster demonstrated excellent communication skills and made a very favorable impression with me." Aff. Brian Loynachan ¶ 8. Mr. Rieser also noted in deposition that Mr. Webster was engaging and exhibited the type of interpersonal skills expected from a sales manager; specifically, that Mr. Webster was "[p]leasant, conversational, [and] made eye contact." Depo. Mark Rieser 27:23–28:1. Although Mr. Rieser indicated on Mr. Webster's candidate evaluation form that he wished Mr. Webster had more experience, he ultimately recommended that he be hired, stating in deposition that the managers felt "he had the skills and the personality that would work best at Monarch with Monarch's management team." Depo. Mark Rieser 28:23–29:1.

In light of the evidence the Eleventh Circuit found to constitute reasonably specific factual bases in *Chapman*, this court concludes that Monarch has articulated such bases for the subjective rationale the managers used in making the hiring decision. Thus, the court finds that Monarch has met its "exceedingly light" burden of providing a legitimate, nondiscriminatory reason for its decision to hire Mr. Webster over Mr. Hazel.

*Mr. Hazel does not prove that Monarch's reason for hiring Mr. Webster was pretext*

Once the presumption of discrimination is rebutted, the burden shifts back to Mr. Hazel to offer evidence that Monarch's alleged reason was pretext for unlawful discrimination. *Bradley*, 440 Fed. Appx. at 808 (citing *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007)). A reason is not pretext for discrimination unless Mr. Hazel can show both that Monarch's reason was false and discrimination was the real reason. *See Joseph v. Columbus*

*Bank and Trust Co.*, 447 Fed. Appx. 110, 112 (citing *St. Mary's Honor Center v. Hicks*, 409 U.S. 502, 515 (1993)). Mr. Hazel must meet Monarch's stated reason head on and rebut it; "[he] cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. If Mr. Hazel does not proffer sufficient evidence to create a genuine issue of material fact regarding whether Monarch's articulated reason is pretextual, Monarch is entitled to summary judgment on Mr. Hazel's claim. *Chapman*, 229 F.3d at 1024–25.

Mr. Hazel may succeed in demonstrating that Monarch's stated, subjective reason for not hiring him was pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, *Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997). He attempts to demonstrate pretext first by comparing his and Mr. Webster's qualifications, and second by pointing out alleged inconsistencies in Monarch's evaluation process.

*Disparities between Mr. Hazel and Mr. Webster's qualifications are insufficient to establish pretext*

Mr. Hazel first argues that he "was so clearly more qualified for the position than [the selected candidate] that a reasonable juror could infer discriminatory intent from the comparison." Pl. Opp. Br. at 13 (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)). Mr. Hazel points to disparities between himself and Mr. Webster, including: (1) Mr. Hazel had a bachelor's degree in psychology and English, while Mr. Webster only had a high school diploma; (2) Mr. Hazel had twenty-five years of experience in sales management, while Mr. Webster only had ten years; (3) Mr. Hazel had a maximum annual sales year of $80 million, while Mr. Webster

14

had only $15 million; and (4) Mr. Hazel had managed $500 million of sales total over his career, as opposed to his estimation that Mr. Webster had managed less than $75 million of sales.

Mr. Hazel also emphasizes the differences between the candidates on Mr. Rieser's candidate evaluation form in the experience category.  On Mr. Hazel's form, Mr. Rieser marked Mr. Hazel as fully met requirements in the knowledge and experience category, and praised Mr. Hazel for his experience, listing "experience and connections" as one of Mr. Hazel's strengths. *See* Ex. A to Aff. Teresa Hughes at 2. In contrast, Mr. Rieser marked Mr. Webster's knowledge and experience as borderline, listing "would like more experience" as one of Mr. Webster's weaknesses. *See* Ex. C to Aff. Teresa Hughes at 2.

Under some circumstances, qualifications evidence may suffice to show pretext.  *See Ash v. Tyson Foods*, 546 U.S. 454, 457 (2006). But the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper*, 390 F.3d at 732 (internal quotation marks omitted).[2] Under this standard, Mr. Hazel has not shown that the disparity in his and Mr. Webster's qualifications are of such weight and significance that no reasonable person could have chosen Mr. Webster over Mr. Hazel. One would expect that Mr.

---

[2] The court notes that although *Ash v. Tyson*, 546 U.S. 454, reversed, in part, *Cooper v. Southern Company*, 390 F.3d 695, the Supreme Court did so on the basis that the Eleventh Circuit's previous standard for using qualifications evidence in establishing pretext—that the "disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face"—was "unhelpful and imprecise as an elaboration of the standard for inferring pretext from superior qualifications." *Ash*, 546 U.S. at 457 (quoting *Cooper*, 390 F.3d at 732). In the following sentence, the Court cited with approval the standard that "the disparities in qualification must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Ash*, 546 U.S. at 457. The Eleventh Circuit subsequently reaffirmed that it was applying the "no reasonable person" standard. *See Ash v. Tyson*, 190 Fed. Apex. 924, 927 (11th Cir. 2006) (explaining that the "no reasonable" person standard had been applied in several cases the Eleventh Circuit issued in 2006, cases where the "comparative qualifications and other alleged indicia of discrimination (i.e., subjective criteria used by the decision-maker, plaintiff's belief that his (or her) qualifications were superior), were held insufficient for a factfinder reasonably to find that the decision was not based on the qualifications of the applicants.").

Hazel, having lived and worked longer than Mr. Webster, would have accumulated more years of experience and total sales over his career. These disparities in quantity, however, do not speak to the quality of Mr. Webster's experiences or to Mr. Webster's qualification for Monarch's sales manager position. And simply because Mr. Reiser would have liked Mr. Webster to have more experience—a concern not raised by Ms. Tillery—does not mean that Mr. Rieser did not find Mr. Webster qualified for the job.

Mr. Hazel has not explained how Mr. Webster's lower sales numbers and fewer years of experience make him unqualified for the sales management position, as is his burden when establishing pretext. The court, thus, concludes that Mr. Hazel has failed to establish that the disparities between him and Mr. Webster are "of such weight and significance that no reasonable person, in the exercise of impartial judgment," would have picked Mr. Webster over Mr. Hazel. Thus, Mr. Hazel cannot establish pretext by merely comparing Mr. Hazel's and Mr. Webster's career sales statistics. *See Cooper*, 390 F.3d at 732.

*Mr. Hazel does not show such "inconsistencies, incoherencies, or contradictions" in Monarch's reason for its decision as to establish pretext*

Mr. Hazel argues that Monarch's managers exhibited inconsistency in evaluating and selecting between the candidates based on their interview performances. Mr. Hazel does not dispute that Monarch's managers noted that he had poor communication skills, but instead points to Mr. Rieser's evaluation of Mr. Webster, which Mr. Hazel claims is also critical of Mr. Webster's communication skills. In his evaluation, Mr. Rieser noted that Mr. Webster had "[e]xcellent verbal, talks too much but possibly nervous[,] [s]hould listen more," and marked Mr. Webster's communication skills as superior. Mr. Rieser also listed "listening" as one of Mr.

16

Webster's weaknesses, along with his desire that Mr. Webster have more experience. Because Mr. Rieser listed "listening" as a weakness for Mr. Webser, Mr. Hazel argues that Monarch inconsistently used "communication" in making its hiring decision, and argues that the inconsistency is sufficient to show that Monarch's stated, subjective reason was pretext. He stresses this inconsistency by pointing out that although both candidates were "criticized" for their communication skills, neither Mr. Rieser nor Ms. Tillery questioned Mr. Hazel's knowledge and experience, while Mr. Rieser marked Mr. Webster's knowledge and experience as borderline. *See* Pl. Opp. Br. at 16. This inconsistency, according to Mr. Hazel, creates a genuine issue of material fact that Monarch's subjective reason for hiring Mr. Webster was merely pretext for its alleged true reason—that Mr. Webster was much younger than Mr. Hazel.

Mr. Hazel, however, ignores the context in which Mr. Rieser made the criticisms about Mr. Webster, and distorts the reason Monarch made its decision to hire Mr. Webster. First, out of the two managers for whom Monarch could produce candidate evaluation forms, only Mr. Rieser had anything negative to say about Mr. Webster's communication skills.[3] Ms. Tillery noted that Mr. Webster "[k]nows how to interact with others" and "looks forward to a challenge" *see* Ex. D to Aff. Teresa Hughes at 1, and she did not note any weaknesses for Mr. Webster. Even Mr. Rieser preceded his criticism of Mr. Webster with positive feedback, and he questioned whether Mr. Webster talked too much or did not listen because of nervousness. Although Mr. Rieser

---

[3] In the last paragraph of his legal arguments, Mr. Hazel argues, almost as an afterthought, that Monarch's inability to produce all candidate evaluation forms should weigh against granting summary judgment. *See* Pl. Opp. Br. at 17 ("A jury finding is the only proper way to determine what inferences should be drawn from the absence of these lost documents."). Mr. Hazel offers no authority for supporting this assertion, in which he essentially states that the absence of the documents raises a genuine issue of material fact. The burden is on Mr. Hazel to cite to evidence disputing that cited by Monarch—including Monarch's evidence that the consensus of the managers was that Mr. Hazel interviewed poorly. He has not done so and has not explained how the absence of these documents creates such a dispute.

listed "listening" as a weakness, he noted "communication" as one of Mr. Webster's strengths. These minor contradictions, generated on a form Mr. Rieser filled out close in time to the interview to reflect his contemporaneous observations, do not show enough inconsistency between how the managers evaluated and relied upon the candidates' communication skills to establish pretext.

The second distortion Mr. Hazel makes in arguing pretext is recasting Monarch's reason for hiring Mr. Webster as based solely on communication skills. Monarch did not hire Mr. Webster solely because the managers believed he was a better communicator, although Mr. Webster's perceived superior interpersonal skills were certainly one reason for Monarch's decision. Monarch also hired Mr. Webster because its managers believed that he would be a better fit for the company and the management team. As this court has explained, Monarch is entitled to base its decision on such subjective rationales, particularly for a supervisory sales position. In disputing these rationales, Mr. Hazel "is not allowed to recast [Monarch]'s proffered nondiscriminatory reasons or substitute [his] business judgment for [Monarch's]," and he must do more than "simply quarrel[] with the wisdom of [Monarch]'s reason." *Chapman*, 229 F.3d at 1030.

In light of the evidence, Mr. Hazel has not done more than "quarrel with the wisdom" of Monarch's reason. In arguing pretext, he appears to believe that no reasonable decision maker could have chosen a person with less years of experience and total career sales, unless the decision maker was motivated by age discrimination. "[T]he inquiry into pretext," however, "centers on the employer's beliefs, not the employee's beliefs, and to be blunt about it, not in reality as it exists outside of the decision maker's head." *See Alvarez v. Royal A. Developers*,

*Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Even if Mr. Hazel were correct in arguing that he was more qualified for the position than Mr. Webster, Monarch is entitled to rely on the subjective impressions its managers developed during the interview process; moreover, Mr. Hazel has not cited any authority that prevents the managers from deciding how much weight to give to their subjective impressions versus the on-paper credentials of the candidates. Mr. Hazel's protests to the contrary do not establish pretext, because he does not show that the managers were motivated by discriminatory animus. His opposition, instead, is his own business judgment that Monarch selected a less qualified candidate, a business judgment that is irrelevant in this analysis. Even were the court to agree that Monarch chose the less qualified candidate, the court "do[es] not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman*, 229 F.3d at 1030. The court's inquiry, instead, is limited to whether Monarch gave an honest explanation for its decision. *Chapman*, 229 F.3d at 1030. The court concludes that Monarch has done so.

Mr. Hazel also attempts to raise a genuine issue of material fact by arguing that Ms. Tillery's criticism of Mr. Hazel—that he "seem[ed] slow in communication"— "could be inferred by a factfinder to be based on [Mr. Hazel]'s age." Pl. Opp. Br. at 16. In *Chapman*, the majority of the *en banc* court rejected a similar contention from the dissenting judges who argued that the use of aggressiveness as a hiring criteria was equivalent to age bias, or at least was highly suspicious, because of stereotypes associated with age. *Chapman*, 229 F.3d at 1036. The majority explained that "[j]ust because a sought after trait is linked by stereotype to an impermissible consideration does not mean an employer cannot search for and consider the trait itself independently from the stereotype." *Chapman*, 229 F.3d at 1036. Similarly, just because

19

slowness in communication may be a stereotype associated with age does not mean that it cannot be considered by Monarch, particularly for a sales manager position where communication is key. Neither does the association of slowness in communication with age make Monarch's consideration of Ms. Tillery's criticism pretext for age discrimination.

The court also agrees with Monarch that the fact that all managers were in Mr. Hazel's protected class weighs against finding pretext. The Eleventh Circuit has explained that a plaintiff "faces a difficult burden" when the primary decision makers are within the class of persons protected by the ADEA. *Elrod v. Sears*, *Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). In this case, all managers who interviewed both Mr. Hazel and Mr. Webster were over the age of forty. Although this fact alone would not sink Mr. Hazel's ADEA claim, it further weakens Mr. Hazel's argument that Monarch's stated, subjective reason for not selecting him was merely pretext for age discrimination.

Finally, the court notes that the nature of this case does not make it unsuitable for resolution on summary judgment, as Mr. Hazel argues in his brief. In making this argument, he cites a case observing that "such cases are only infrequently resolved on summary judgment because the credibility of witnesses and the weight of the evidence, quintessential jury questions, are so central to any determination." Pl. Opp. Br. at 12–13 (quoting *Strickland v. Prime Care of Dothan*, 108 F. Supp. 2d 1329, 1332 (M.D. Ala. 2000)). The court notes, however, that the district court in *Strickland* court preceded its statement by pointing out that the parties had raised direct factual disputes. *See Strickland*, 108 F. Supp. 2d at 1332 ("Preliminarily, it is important to point out that much, if not all, of the evidence is disputed. Someone is lying or–at least–has simply forgotten the truth."). In this case, no such direct factual disputes exist—neither party

20

disputes Mr. Hazel's or Mr. Webster's credentials, and neither party disputes what was written

on the candidate evaluation forms.  Moreover, the Eleventh Circuit emphasized in its majority

opinion in *Chapman* that summary judgment in employment discrimination cases was not as rare

as it was once made out to be. *See Chapman*, 229 F.3d at 1025 (questioning whether courts ever

followed "the general rule [that] summary judgment is not a proper vehicle for resolving claims

of employment discrimination which often turn on an employer's motivation and intent" after

that general rule was pronounced, and explaining that "[t]he long and short of it is that the

summary judgment rule applies in job discrimination cases as in other cases. No thumb is to be

placed on either side of the scale.") (alteration in original) (quoting *Delgado v. Lockheed-*

*Georgia Co.*, 815 F.2d 641, 644 (11th Cir. 1987)). The court, thus, is not persuaded that granting

summary judgment in this case would be inappropriate simply because the case involves

employment discrimination.

## <u>CONCLUSION</u>

The Supreme Court's opinion in *Gross v. FBL Financial Services*, 557 U.S. 167, raised

the bar for claims under the ADEA, holding that age no longer had to be only a "motivating

factor" for an employer's decision, but instead, had to the "but-for" cause for the employer's

decision. *See Mora v. Jackson Mem. Found.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (summarizing

the Supreme Court's holding from *Gross*). The evidence produced in this case has shown that

Mr. Hazel not only failed to establish that age was a "but-for" cause of his non-selection for the

sales manager position, but also that he failed to establish that age was a factor at all. Monarch

gave a legitimate, nondiscriminatory reason for its selection of Mr. Webster—the subjective

impressions of the interviewers—and Mr. Hazel has not shown sufficient evidence to create a

genuine issue of fact that this reason was pretext for age discrimination. Accordingly, the court concludes that Mr. Hazel has failed as a matter of law to establish a claim under the ADEA, and GRANTS Monarch's motion for summary judgment. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 17th day of May, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

22